DENNIS, Circuit Judge:
The plaintiffs in this case, workers who were employed in cleaning up radioactive materials, alleged that they were harmed by excessive exposure to radiation at a Texas work site and brought a tort claim suit in a New York state court against their employer and supervisors under the Price-Anderson Act, 42 U.S.C. § 2011 et seq. (“the PAA”), and Texas state law. Under the explicit removal provision of the PAA, 42 U.S.C. § 2210(n)(2), the defendants removed this case to the United States District for the Southern District of Texas, where the alleged injuries occurred. That district court granted the defendants’ motion for summary judgment as to the plaintiffs’ claims that were predicated on bodily injuries and illnesses, holding that the plaintiffs had failed to show a genuine issue of material fact as to whether their physical harms had been caused by overexposure to radiation. At the same time, the district court denied the defendants’ motion for summary judgment with respect to the plaintiffs’ claims for damages based on “offensive contact” battery by radiation. The district court held that, whereas the bodily injury and illness claims arose under federal law by operation of the PAA, 42 U.S.C. § 2014(hh), the plaintiffs’ “offensive contact” claims arose *190 solely under Texas law. The district court declined to exercise supplemental jurisdiction over what it saw as purely .state-law claims and dismissed them without prejudice.
This panel unanimously affirms the district court’s summary judgment dismissing the plaintiffs’ physical injury and illness claims. But we unanimously conclude that the district court erred in treating the plaintiffs’ “offensive contact” claims as if they arose solely under Texas law. Although all of the plaintiffs’ claims are derived from Texas law, they are deemed to arise under federal law by the PAA, because they are part of a “suit asserting public liability” as defined by the PAA. See id. This panel is divided, however, upon what further action the district court must take in respect to the “offensive contact” battery claims. A majority of the panel, Judges KING and ELROD, concludes that the “offensive contact” claims fail under the PAA and must be dismissed with prejudice because the plaintiffs have not shown that these claims arose from a nuclear incident, and therefore cannot establish public liability. In a separate dissenting opinion, infra at 200-07, I explain why I disagree with that result and would remand the plaintiffs’ “offensive contact” battery claims to the district court for further adjudication.
I.
Pursuant to a government contract, Shaw Environmental, Inc. cleaned up radioactive material at a former nuclear source fabrication facility in Webster, Texas. The plaintiffs, who were employed by Shaw’s subcontractors at the Texas work site for the project, contend that Shaw and its supervisors exposed them to excessive levels of radiation during their employment. Such exposure, especially to americium-241 and cesium-137, allegedly caused them to suffer certain bodily injuries and illnesses.[1] According to the plaintiffs, defendants failed to take appropriate precautions that could have prevented this excessive exposure. They claim, for instance, that “inappropriate radiation waste bags were purchased from the Dollar Store to save money.”
They sued the defendants in a New York state court, asserting Texas state-law claims for negligence, gross negligence, negligence per se, and assault and battery. The plaintiffs’ complaint alleges not only that the defendants’ intentional or negligent conduct caused their bodily injuries and illnesses (bodily injury claims), but also that the defendants intentionally or knowingly caused excessive amounts of radiation to make offensive physical contact with them (“offensive contact” claims). The “offensive contact” claims are battery claims, which do not require a showing of physical injury.
It is undisputed that the plaintiffs’ bodily injury claims are deemed to arise under federal law by virtue of the PAA, 42 U.S.C. § 2014(hh). Pursuant to the PAA’s venue and removal provision, 42 U.S.C. § 2210(n)(2), the defendants removed this action to the United States District Court for the Southern District of Texas, the *191 district where the incidents giving rise to the complaint occurred. The parties proceeded with discovery, and on the plaintiffs’ motion, the district court admitted two expert reports by Dr. Marvin Resnikoff. These reports opined that the plaintiffs’ injuries could have been caused by their workplace exposure to radiation. The district court also admitted the report of the defendants’ expert, Dr. Robert E. Jackson, to the contrary. After the deadline for expert discovery, the plaintiffs attempted to designate a previously undisclosed expert, Dr. Kalpana Patel, but the district court excluded Dr. Patel as a witness and her affidavit as untimely.
Following discovery, the defendants moved for summary judgment, arguing that the plaintiffs had not provided legally sufficient evidence to create a factual issue as to whether their physical injuries or illnesses had been caused by their exposure to radiation at the cleanup site. The defendants also argued that the “offensive contact” claims were legally excluded by the PAA and therefore were extinguished and not actionable. The district court held that the plaintiffs had failed to show a genuine issue of material fact as to whether their physical harms had been caused by overexposure to radiation, and accordingly granted the defendants’ summary judgment motion in part.
As to the plaintiffs’ “offensive contact” claims, however, the district court determined that the defendants were not entitled to summary judgment. The district court held that these claims were not deemed to arise under the PAA by operation of 42 U.S.C. § 2014(hh) and were therefore purely state-law claims. The district court reasoned that federal causes of action under the PAA are available only for suits asserting liability arising out of “nuclear incident[s],” which are defined as occurrences causing “bodily injury, sickness, disease, or death,” id. § 2014(q); and that because the “offensive contact” claims did not arise out of a “nuclear incident,” they fell outside the PAA’s scope. Furthermore, the district court declined to exercise supplemental jurisdiction over the “offensive contact” claims, which it observed “present novel legal issues not previously addressed by the Texas Supreme Court.” Accordingly, the district court dismissed the “offensive contact” claims without prejudice, allowing the plaintiffs to refile them in state court.
This appeal followed. The defendants argue that the plaintiffs’ “offensive contact” claims should have been dismissed on the merits because they are barred by the PAA. The plaintiffs cross-appeal, challenging the summary judgment dismissing their bodily injury and illness claims.
II.
We review a district court’s summary judgment de novo, “guided by the same standard as the district court: Federal Rule of Civil Procedure 56.” In re Segerstrom, 247 F.3d 218, 223 (5th Cir.2001). Summary judgment is appropriate when “there is ‘no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.’ ” Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir.2010) (quoting Fed.R.Civ.P. 56(a)). “The party moving for summary judgment must establish that there are no genuine issues of material fact. ‘Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.’ ” Provident Life & Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir.2001) (quoting Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir.1991)). “Thus, to defeat a motion for summary judgment, the nonmoving party must ‘go beyond the pleadings and by her own *192 affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.’ ” Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). “The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.” Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal quotation mark omitted).
The PAA, as amended in 1988, establishes a federal cause of action known as a “public liability action” for tort claims arising out of incidents involving radioactive materials. This cause of action “is built around preexisting state law, [but] contains some distinctively federal elements as well.” O’Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1096 (7th Cir.1994).[2] “In explicitly providing that the ‘substantive rules for decision’ in public liability actions ‘shall be derived from’ the law of the state in which the nuclear incident occurred, ... Congress expressed its intention that state law provides the content of and operates as federal law.” In re TMI Litig. Cases Consol. II, 940 F.2d 832, 855 (3d Cir.1991) (quoting 42 U.S.C. § 2014(hh)). “Thus, a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.” O’Conner, 13 F.3d at 1099-1100. “Congress clearly intended to supplant all possible state causes of action when the factual prerequisite[s] of the statute are met.” In re TMI, 940 F.2d at 857. “Congress desired that state law provide the content for and operate as federal law ... in the context of a complex federal scheme which would mold and shape any cause of action grounded in state law.” O’Conner, 13 F.3d at 1100.
 In short, a plaintiff who asserts any claim arising out of a “nuclear incident” as defined in the PAA, 42 U.S.C. § 2014(q), “can sue under the [PAA] or not at all.” Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir.1997). “His federal claim will be derived from state law,” id., “unless such law is inconsistent with the provisions of [§ 2210],” 42 U.S.C. § 2014(hh).
Because the parties agree that the plaintiffs’ bodily injury claims arise under the PAA, we first address the district court’s summary judgment on those claims, before resolving the dispute regarding the proper disposition of the “offensive contact” claims.
A.[3]
On cross-appeal, the plaintiffs argue that the district court erred in dismissing their bodily injury claims for failure to provide evidence that excessive radiation exposure at the cleanup site caused the plaintiffs’ injuries. Our review of the record confirms that the district court properly entered summary judgment for the defendants on these claims. The plaintiffs’ evidence was insufficient to raise a genuine issue of fact as to whether there was a *193 causal connection between the radiation exposure and the plaintiffs’ claimed injuries.
The plaintiffs attempted to use epidemiological studies to establish that their overexposure to radiation caused their physical harms. The Texas Supreme Court has held that epidemiological studies can be used “to raise a fact issue on causation” only if three conditions are met: (1) the studies are scientifically reliable and show a “substantially elevated risk,” (2) the claimant is “similar to those in the studies,” and (3) “if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty.” Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 720 (Tex.1997) (emphasis added).
We need not address the first two Havner conditions because we agree with the district court that the plaintiffs have failed to satisfy the third: they have not offered evidence excluding other plausible causes of their injuries with reasonable certainty. The defendants’ expert, Dr. Jackson, offered numerous plausible causes, other than radiation exposure, for the plaintiffs’ alleged injuries. The plaintiffs’ expert, Dr. Resnikoff, offered no deposition testimony or evidence excluding with reasonable certainty Dr. Jackson’s proposed alternative causes; to the contrary, Dr. Resnikoff acknowledged that the plaintiffs’ injuries might have been caused by factors other than their exposure to radiation. Similarly, Dr. Patel’s affidavit made no effort to exclude other possible causes of the plaintiffs’ injuries. Indeed, her affidavit did not dispute Dr. Jackson’s assertion: “[I]t is true, as described in Dr. Jackson’s Report, that all of the disorders and conditions being experienced by the Plaintiffs could come from other causes.” Although Dr. Patel’s affidavit countered that “these disorders and conditions can also be caused by radiation exposure,” it did nothing to exclude Dr. Jackson’s suggested alternative causes with reasonable certainty. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 559 (Tex.1995) (holding that an expert’s “failure to rule out other causes of the damage renders his opinion little more than speculation”); Mobil Oil Corp. v. Bailey, 187 S.W.3d 265, 274-75 (Tex.App. — Beaumont 2006, pet. denied) (holding, under Havner, that the plaintiffs did not offer sufficient evidence that asbestos exposure caused the decedent’s lung cancer because the plaintiffs’ experts did not exclude other plausible causes, such as smoking, with reasonable certainty); Exxon Corp. v. Makofski, 116 S.W.3d 176, 188-89 (Tex.App.— Houston [14th Dist.] 2003, pet. denied) (holding that under Havner, that the plaintiffs did not offer sufficient evidence that benzene caused the decedent’s anemia because their expert did not exclude other plausible alternative causes, such as iron deficiency, with reasonable certainty). Thus, even taking into account Dr. Patel’s affidavit, the plaintiffs have failed to satisfy their burden of excluding other plausible causes of their injuries with reasonable certainty.[4] Accordingly, we affirm the summary judgment as to the plaintiffs’ bodily injury claims.
B.[5]
We now consider the plaintiffs’ “offensive contact” claims. In order to *194 determine whether these claims arise under the PAA, we must examine the precise language of the PAA, and especially § 2014(hh), which defines the term “public liability action” and identifies the legal rules that govern such actions. “ ‘The objective of a court called upon to interpret a statute is to ascertain congressional intent and give effect to legislative will.’ The clearest indication of congressional intent is the words of the statute itself. When the language of a statute is unambiguous we must follow its plain meaning.” Davis v. Johnson, 158 F.3d 806, 810 (5th Cir.1998) (citations omitted) (quoting Johnson v. Am. Airlines, Inc., 745 F.2d 988, 992 (5th Cir.1984)).
The statute employs a chain of definitions to define the scope of a “public liability action.” A “public liability action” means a “suit asserting public liability.” 42 U.S.C. § 2014(hh). “Public liability” means “any legal liability arising out of or resulting from a nuclear incident.”[6] Id. § 2014(w). A “nuclear incident” involves “bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property” caused by the “radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.”[7] Id. § 2014(q). To summarize, a “public liability action” is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, or property damage.
This suit is a “public liability action” as defined by the PAA, because the plaintiffs allege that they suffered injuries and illnesses due to their exposure to radiation, and because they assert that the defendants bear legal liability arising out of these incidents of exposure to radiation.[8] Since it is a “public liability action,” it is to be treated as arising under federal law: “A public liability action shall be deemed to be an action arising under section 2210 of this title ....” 42 U.S.C. § 2014(hh).
Therefore, the district court erred by holding that the plaintiffs’ “offensive contact” claims did not arise under federal law. Those claims are part of this suit, which is a “public liability action.” The PAA, in section 2014(hh), provides that the entire suit, not just particular claims that are part of the suit, “shall be deemed to be an action arising under section 2210.” Therefore, the “offensive contact” claims, along with the plaintiffs’ other claims, must be treated as arising under federal law. The fact that the plaintiffs have failed to produce sufficient evidence to survive summary judgment as to whether their injuries and illnesses were actually caused by their overexposure to radiation does not change this result. It nonetheless remains true that this action is a “suit asserting public liability.” Id. § 2014(hh) (emphasis added). As such, it is a “public liability action” and therefore the entire suit is deemed to be an action arising under federal law.
*195 Because this entire suit — the bodily injury claims as well as the “offensive contact” claims — arises under federal law, the district court’s disposition of the “offensive contact” claims was erroneous. The district court believed the claims arose exclusively under state law, declined to exercise supplemental jurisdiction over them, and thus dismissed the claims without prejudice. See 28 U.S.C. § 1867(c). Given that the claims actually arise under federal law by operation of the PAA, however, the district court had original, rather than supplemental, jurisdiction over them. As such, the district court could not decline to exercise that jurisdiction. See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358-59, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).
C.[9]
Having established that the plaintiffs’ “offensive contact” claims arise under federal law because they are part of a “public liability action,” this court must consider whether such claims are compensable under the PAA. Section 2014(hh) provides that “[a] public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.” Thus, the claims in this case, including the “offensive contact” claims, are governed by substantive rules derived from Texas law unless that law is inconsistent with 42 U.S.C. § 2210. See O’Conner, 13 F.3d at 1100-01 (“[T]he court will have to assess whether the applicable state law is consistent with federal law.”); cf. Nieman, 108 F.3d at 1560, 1562 (eonsidering, but not resolving, the issue of “whether a claim for continuing trespass, as defined by Ohio law, is inconsistent with the Price-Anderson Act,” specifically § 2210(n)(l)).
An “offensive contact” claim is a type of battery claim under Texas law. “[R]ather than physical injury, offensive contact is the gravamen of the action; consequently, the defendant is liable not only for contacts which cause actual physical harm, but also for those which are offensive and provocative.” Foye v. Montes, 9 S.W.3d 436, 441 (Tex.App.—Houston [14th Dist.] 1999, pet. denied); see also Price v. Short, 931 S.W.2d 677, 687 (Tex.App.—Dallas 1996, no pet.) (“Battery requires only an offensive touching .... ”). Thus, an “offensive contact” claim does not require a plaintiff to prove that the battery caused any physical injury. Foye, 9 S.W.3d at 441. The parties dispute whether a defendant’s intentional overexposure of a plaintiff to radiation can be actionable as an “offensive contact” battery under Texas law. We need not resolve this dispute, however, because we conclude that, even if it is actionable under state law, in this case such a cause of action would be inconsistent with section 2210 because it would allow plaintiffs to recover on their public liability action without establishing “public liability.”
As discussed above, a public liability action means a “suit asserting public liability.” 42 U.S.C. § 2014(hh). Although “asserting” that a nuclear incident occurred is sufficient to make the suit a public liability action, id. § 2014(hh), proof of a nuclear incident is required to actually establish “public liability”: “legal liability arising out of or resulting from a nuclear incident ____” Id. § 2014(w). Public liability — the *196 only type of legal liability contemplated by a public liability action — thus presupposes the occurrence of a nuclear incident. Therefore, if the plaintiff cannot show that a nuclear incident occurred, there can be no public liability, and hence no recovery on his public liability action.[10] See Cook v. Rockwell Int’l Corp., 618 F.3d 1127, 1139 (10th Cir.2010) (“[T]he occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q), constitutes a threshold element of any PAA claim.”). This result is perfectly logical: the success or failure of a plaintiffs public liability action depends upon whether the plaintiff can prove what he asserts — public liability.
Moreover, examination of section 2210 confirms this straightforward reading of the statute. Section 2210, which is titled “Indemnification and limitation of liability,” contains numerous provisions concerning financial arrangements between the federal government and the nuclear energy industry for the overall purpose of protecting the industry against potentially vast liability that might arise out of a nuclear disaster. See Corcoran v. N.Y. Power Auth., 202 F.3d 530, 539 (2d Cir.1999) (“Congress enacted Price-Anderson to: (1) ensure that adequate funds would be available to satisfy liability claims in the event of a nuclear accident; and (2) encourage private sector participation in the atomic energy industry by reducing the threat of potentially enormous liability arising out of the operation of an atomic energy plant.”). Among other things, section 2210 deals with insurance premiums, indemnification, limitation of liability, and procedures for Congress and the executive and judicial branches to follow when damages from a nuclear incident exceed the PAA’s liability limits. Allowing recovery in the absence of a nuclear incident would be inconsistent with almost all of these provisions. Far from placing an “overlay of federal law” upon state law remedies, In re TMI, 940 F.2d at 858, it would permit an end-run around the entire PAA scheme.
Crucially, the majority of the provisions in section 2210 deal with “public liability” and thus presume the occurrence of a nuclear incident. The provisions which limit liability, for example, speak of the “aggregate public liability for a single nuclear incident.... ” id § 2210(e)(1) (emphasis added); see also id. § 2210(r) (limitation on liability of lessors applies only to “liability arising out of or resulting from a nuclear incident ” (emphasis added)). The same is true of the provisions which provide for compensation plans where these public liability limits are exceeded. See id. § 2210(i). Similarly, other provisions require nuclear licensees to obtain adequate insurance to provide “financial protection,” id. § 2210(a)-(b), which is defined as “the ability to respond in damages for public liability.” Id. § 2014(k) (emphasis added). Likewise, the indemnification provisions apply to “public liability arising from nuclear incidents.” Id. § 2210(c)-(d) (emphasis added). And punitive damage awards are prohibited “with respect to a nuclear incident ... against a person on behalf of whom the United States is obligated to make payments under an agreement of indemnification eov *197 ering such incident .... ” Id. § 2210(s) (emphasis added). Thus, if a public liability action can lead to a recovery without a showing of public liability — which in turn requires the occurrence of a nuclear incident — it undermines the “complex federal scheme” Congress has created to govern public liability actions under the PAA. See O’Conner, 13 F.3d at 1100 (“Congress recognized that state law would operate in the context of a complex federal scheme which would mold and shape any cause of action grounded in state law.”).
In sum, the PAA expressly provides that state law supplies the substantive rules of decision for a public liability action, “unless such law is inconsistent with the provisions of [42 U.S.C. § 2210].” 42 U.S.C. § 2014(hh). Yet recovery on a state law cause of action without a showing that a nuclear incident has occurred would circumvent the entire scheme governing public liability actions, which is clearly inconsistent with section 2210.[11] Consequently, we hold that in order for a plaintiff to prevail in a public liability action, he must prove, rather than merely assert, public liability. See Cook, 618 F.3d at 1139-40 (rejecting plaintiffs’ argument “that they need only assert liability arising out of a nuclear incident” in order to recover under the PAA).
Here, plaintiffs cannot make the required showing. As a result of the summary judgment on their bodily injury claims, the plaintiffs cannot establish public liability. Having failed to prove that radiation exposure caused their bodily injuries, they cannot prove that a nuclear incident occurred — an “occurrence ... causing ... bodily injury ... arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.” Id. § 2014(q). Without such a showing, however, their “offensive contact” claims under Texas law are inconsistent with the PAA, and they cannot establish public liability, as they must in order to prevail in their public liability action.[12]
*198 To be clear, the problem with the “offensive contact” claims is not, as defendants argue, that the PAA forbids courts from entertaining claims whose elements do not include physical injury, illness, or property damage — the harms the statute uses to define a “nuclear incident.” See id. Rather, these claims are inconsistent with the PAA because, in this particular case, they would allow recovery without a showing that a nuclear incident occurred. In other words, had the plaintiffs successfully proven their bodily injury claims and thus established the occurrence of a nuclear incident, a recovery on their “offensive contact” claims would not be inconsistent with the PAA.[13]
The defendants are certainly correct that the statute defines a “nuclear incident” in part by referring to certain harms. Nothing in the statute, however, specifies that a “nuclear incident” may cause only those listed harms. An occurrence which causes a listed harm in addition to other harms does not thereby cease to be a “nuclear incident.” Thus, the statute sets a minimum threshold of injury that an occurrence must cause before it constitutes a “nuclear incident” for purposes of the PAA. Reading this to limit the recoverable harms contravenes the plain language of the statute, which explicitly provides that “public liability” encompasses “any legal liability arising out of or resulting from a nuclear incident.” 42 U.S.C. § 2014(w) (emphasis added). We therefore reject defendants’ assertion that only the listed harms are compensable under the PAA. We instead agree with the Tenth Circuit that it is “the occurrence of a nuclear incident, and thus a sufficient injury under § 2014(q)” that is required in order to make a plaintiffs public liability action consistent with the PAA.[14] Cook, 618 F.3d at 1139-40.
*199 The Ninth Circuit reached a similar conclusion in the factually analogous case of Golden v. CH2M Hill Hanford Group, Inc., 528 F.3d 681, 683-84 (9th Cir.2008). There, Golden asserted state law claims for physical injuries, as well as emotional distress, allegedly resulting from his exposure to nuclear radiation. Id. at 682-83. Just as in this case, the Golden court affirmed the district court’s summary judgment on Golden’s claims for physical injury, agreeing that he had failed to prove that radiation exposure caused his injuries. Id. at 683. The court then rejected his emotional distress claims. In doing so, the court concluded that “claims for exposure to radioactive materials are only compensable under the Price-Anderson Act if such exposure caused physical injury”— that is, if the exposure was a “nuclear incident” within the meaning of the PAA. Id. at 683 (internal quotation marks omitted) (citing In re Berg Litig., 293 F.3d 1127, 1132-33 (9th Cir.2002)). As long as the exposure caused an injury sufficient to make the occurrence a “nuclear incident,” a plaintiffs claims for non-listed harms arising out of that occurrence are not inconsistent with the PAA.[15] See id. (“Golden can’t show that the exposure caused his physical injuries and without physical injury, he can’t recover for psychic harm arising from exposure to radioactive materials.”).
In this case, the plaintiffs’ public liability action fails because they have not proven the occurrence of a nuclear incident. As the summary judgment on their bodily injury claims reflects, they have not shown that their radiation exposure caused their alleged physical injuries. Thus, they have not shown that their exposure constitutes a nuclear incident.[16] Accordingly, they may *200 not recover on their “offensive contact” claims because such a recovery would be inconsistent with the PAA.
III.
For these reasons, this panel unanimously AFFIRMS the district court’s summary judgment dismissing the plaintiffs’ bodily injury and illness claims with prejudice, and VACATES the district court’s disposition of the plaintiffs’ “offensive contact” claims; and a majority of this panel REMANDS the plaintiffs’ “offensive contact” battery claims with instructions to dismiss them with prejudice.

. The plaintiffs allege the following illnesses and injuries: "throat irritation, dizziness/vertigo, liver ammonia, skin infection/rashes/exposure, high blood pressure, hair loss, enlarged prostate, ear infections, sinus infections/problems, gallstones, polyps in throat, nodules on vocal cords, aggravated allergies/asthma, joint or bone pain/problems, vomiting, dehydration, teeth problems, lumps/cysts, depression, irregular menstrual cycles, rectal bleeding, infertility, anemia, heart palpitations/chest pains, blood in urine, kidney stones, bloody noses, stress/anxiety attacks, extreme fatigue, numbness, mole discoloration, sleeping difficulties, and headaches.”

. The Act "dictates the limitations period for a public liability cause of action, 42 U.S.C. § 2210(n)(l), provides for venue, § 2210(n)(2), limits the availability of punitive damages in an action arising out of [a nuclear incident], § 2210(s), and mandates that normally-available defenses be waived in the cases of [extraordinary nuclear occurrences], § 2210(n)(l). The ... Act, therefore, forms the state-based cause of action into the federal mold.’’ O’Conner, 13 F.3d at 1096.

. Judge Dennis concurs in affirming the district court's summary judgment dismissing the plaintiffs’ bodily injury and illness claims but disagrees in part with the majority's reasoning in part 11(A) of this opinion, as set forth in footnote 1 of his partial dissent.

. The district court excluded Dr. Patel as an expert and Dr. Patel's affidavit as untimely, a ruling which the plaintiffs now appeal. We need not address the issue, however, in light of our conclusion that summary judgment was appropriate, even considering Dr. Patel’s affidavit.

. Judge Dennis joins fully in this part of this opinion.

. The definition provides for three exceptions, not relevant to this case. In addition, the definition includes liability arising from a "precautionary evacuation,” not relevant here because the plaintiffs do not claim to have been involved in such an evacuation.

. The definition of "source, special nuclear, or byproduct material” is not at issue in this appeal. It is undisputed for present purposes that the plaintiffs were exposed to some radioactive waste that is encompassed by one or more of these terms. See 42 U.S.C. § 2014(e) (defining “byproduct material”); id. § 2014(z) (defining “source material”); id. § 2014(aa) (defining "special nuclear material”).

. Under the circumstances, we need not decide whether the plaintiffs could have avoided this result through artful pleading.

. Section II.C of this opinion and the result as to the "offensive contact" claims represent the views of the panel majority, Judge King and Judge Elrod. Judge Dennis disagrees with Section II.C and sets forth his reasons in a separate opinion dissenting in part.

. The dissent argues that if Congress intended to limit recovery in this way, it could have said so explicitly, pointing to the fact that three specific categories of claims are explicitly excluded from the definition of "public liability.” Congress had no need to expressly exclude claims not arising out of a nuclear incident, however, because those claims were never included in the definition in the first place. "Public liability,” by it own terms, is limited to "legal liability arising out of or resulting from a nuclear incident ...42 U.S.C. § 2014(w). As such, adding an exclusion for claims not arising out of a nuclear incident would be redundant.

. According to the dissent, allowing a plaintiff to pursue "other liability” beyond "public liability" in their "public liability action” is not inconsistent with section 2210, even though almost every provision governing “public liability actions” would be inapplicable to those claims. The dissent explains that Congress contemplated that "public liability actions” could involve claims of "other liability,” and affirmatively decided that section 2210’s complex federal scheme would simply not apply to those claims. The problem with this reading is that the statutory text does not contain even a whisper about liability other than "public liability,” or a hint that an entire universe of claims — -those not arising from a nuclear incident — would arise under section 2210, yet be governed by almost none of it. Thus, the dissent’s criticism of our reading applies with even greater force to its own: had Congress intended to create two classes of liability in a "public liability action,” but subject only the "public liability” to the numerous provisions in section 2210, it most likely would have expressly said so.

. The dissent criticizes our holding for limiting the types of successful claims in a "public liability action” to claims of "public liability,” resulting in consequences that it believes Congress did not intend. Those consequences are essentially that if a plaintiff asserts that a nuclear incident occurred, but cannot prove it, he will be unable to recover for damages allegedly resulting from that occurrence. If, indeed, any "unintended consequences” flow from our straightforward reading of the statutory text, they result from Congress’s decision to embed the notion of causation into the definition of a "nuclear incident.” See § 2014(q) (defining "nuclear incident” as "any occurrence ... causing ... bodily injury, sickness, disease, or death, or” property damage, "arising out of or resulting from” the hazardous properties of nuclear material (emphasis added)).
Moreover, our reading is surely more consonant with Congress’s intent than the one proposed by the dissent, which would place absolutely no limits on the claims that a plaintiff could recover for in a "public liability *198 action.” The dissent contends that the definition of “public liability” and “nuclear incident,” although used throughout section 2210, nevertheless merely relate to jurisdiction and then have no further bearing upon the claims that can succeed under the PAA. Thus, under the dissent's reading, the plaintiff need only assert, but never prove, the occurrence of a nuclear incident. The plaintiff would then be assured the availability of a federal forum for any and all claims in the action — even those that bear no relationship to the alleged incident. Recovery on any claims which do not arise from a nuclear incident and do not amount to claims of "public liability” would not be subject to the damage caps, recovery pooling, or insurance provisions of section 2210. The substantive rules for decision for these claims would be derived from the law of the state in which the alleged nuclear incident occurred. The upshot of all this is that by merely alleging a "nuclear incident,” a plaintiff could pursue almost any claim, however unrelated to that incident, to recovery in federal court, with choice of law dependent entirely on where the plaintiff alleges the incident occurred. Surely, this cannot be what Congress envisioned when it enacted the PAA. In our view, the text compels the conclusion that "public liability” is the only kind of liability Congress contemplated in a "public liability action.” Thus, any recovery in such an action must be limited to claims for “public liability,” such as those arising from a “nuclear incident.”

. Arguably, had even one plaintiff successfully proven a bodily injury claim, that would render the occurrence a "nuclear incident,” and make all the other plaintiffs' claims consistent with the PAA. We need not decide the question to resolve this appeal, however.

. The dissent, relying on precedent developed under the Outer Continental Shelf Lands Act (OCSLA), accuses us of improperly replacing state rules of decision with newly created federal common law. Similar to the PAA, OCSLA imports state law rules of decision to the extent they are not inconsistent with certain provision of OCSLA or federal law. See 43 U.S.C. § 1333(a)(2)(A). Under that statutory regime, the Supreme Court reversed a Fifth Circuit decision which held that Louisiana’s statute of limitations was inconsistent with the doctrine of laches, which the court applied as a matter of federal common law. Chevron Oil v. Huson, 404 U.S. 97, *199 101, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), overruled on other grounds by Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). The Supreme Court admonished that federal courts must not create new federal common law to override rules of state law under OCSLA. Id. at 103-05, 92 S.Ct. 349. In this case, our holding does not run afoul of the Court's teaching. We have not created a new rule of federal common law — or even identified an old rule of federal common law — and concluded that recovery on the “offensive contact” claims is inconsistent with that rule. Rather, engaging in statutory interpretation of the PAA itself, we have concluded that such a recovery is inconsistent with section 2210. See 42 U.S.C. § 2014(hh) ("[T]he substantive rules of decision in [a public liability action] shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [section 2210].”).

. To the extent some language in the Ninth Circuit's decision in In re Hanford Nuclear Reservation Litig. (Phillips v. E.I. DuPont de Nemours & Co.), 534 F.3d 986 (9th Cir.2008), might suggest that claims for non-listed harms are never compensable under the PAA, we respectfully disagree for the reasons already discussed. Whether a disagreement actually exists, however, is not entirely clear. In that case, the court stated that “claims for medical monitoring are not compensable under the PAA, because they do not constitute claims of 'bodily injury, sickness, disease, or death ....’” Id. at 1009 (quoting § 2014(q)). Yet on the same page, the court clarified that its decision in In re Berg meant "that medical monitoring claims [are] not compensable under the PAA absent physical injury.” Id. (emphasis added). Furthermore, a subsequent Ninth Circuit case cited In re Hanford for the proposition that "[e]xposure to radioactive materials is compensable only if it causes one of the harms on [the statutory] list,” not that only the listed harms are compensable. Dumontier v. Schlumberger Tech. Corp., 543 F.3d 567, 569 (9th Cir.2008).

. We are not called upon to decide whether, should further injuries later appear which the plaintiffs believe result from their radiation exposure, the plaintiffs may then bring a new public liability action. We note, however, that defendants conceded in their brief and at oral argument that the plaintiffs may do so: "If a plaintiff ... is diagnosed with cancer at some future point in time, the statute of limi *200 tations will begin to run when the cause of action accrues, which requires a manifest injury. This suit does not preclude plaintiffs from bringing a claim for a distinct injury, diagnosed at a later point in time.”