# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 16, 2024

Lyle W. Cayce
Clerk

No. 24-20126

Jarrod Newsome,

*Plaintiff—Appellant*,

*versus*

International Paper Company,

*Defendant—Appellee*.

───────────────────────────────

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-1481

───────────────────────────────

Before Wiener, Willett, and Duncan, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

This is a Texas personal-injury case that raises causation and expert-witness issues. Jarrod Newsome was delivering chemicals to International Paper Company's factory when he was overcome by a "rotten smell" and lost consciousness. He sued International Paper for negligence and gross negligence, asserting damages for a slew of claimed injuries. The district court granted summary judgment to International Paper, finding that Newsome failed to establish general causation under Texas law, and denied Newsome's motion for additional time to designate another expert. We AFFIRM.

No. 24-20126

I

A

International Paper contracted with a non-party chemical company to deliver sodium hydrosulfide (NaHS) to International Paper's paper mill in Orange, Texas. NaHS is a chemical compound used for making dyes and other chemicals and as a pulping agent to make paper. When mixed with an acid or exposed to high heat, NaHS releases hydrogen sulfide ($H_2S$), an invisible gas known for its characteristic rotten-egg odor at low concentrations.

The chemical company arranged for Trimac Transportation Services, Inc. to deliver the NaHS to International Paper's mill. To unload NaHS from a truck into a tank at the mill, International Paper personnel must unlock a valve on the tank. Then the truck driver attaches an air hose (from an International Paper air compressor) to the top of the truck trailer and a product hose from the truck trailer to the tank. After attaching the hoses, the driver opens and closes the valves on the truck trailer. The air hose supplies pressure to push the NaHS out of the separate product hose at the bottom of the trailer and into International Paper's NaHS tank.

Jarrod Newsome was a truck driver for Trimac. On January 24, 2019, he arrived at the International Paper mill to deliver NaHS. When Newsome connected the trailer to unload, he and International Paper personnel realized there was no flow from the trailer to the tank. They determined the unload line was frozen and that Newsome should unload at an alternate location—one primarily used for railcar deliveries. At the new location, International Paper personnel and Newsome discussed how to proceed.

This alternate location required an additional length of air hose to reach the valve on the top of Newsome's trailer. The group agreed that Newsome would connect one end of the additional air hose to the primary air

hose (which is connected to the air compressor) and then connect the other end to the top of the trailer before opening the air valve to unload the NaHS.

However, Newsome first connected the additional air hose to the trailer valve. He then realized the other end of the air hose was not connected to the other air hose attached to the compressor. Newsome suggests that when he reached down to attach the two air hoses, the alleged $H_2S$ exposure occurred: "[A]ll I know is I reached down to pick them up to put them together. I smelt something, and I tried to get everybody's attention, but the next thing I know, I must have passed out because I was—when I came to, two guys was picking me up off the ground." Newsome described the odor as a "bad, rotten smell, like something was dead[.]"

Newsome was evaluated by a paramedic onsite, who reported:

[N]o present complaint of pain, no signs of fall injury. Patient is alert and oriented x4. Pupils equal, round, reactive to light. Lung sounds are clear in all lobes bilateral. Patient states he does not have a headache or any weakness at this time. Vital signs were within normal limits. Patient refused further medical treatment.

Newsome then returned to work, finished connecting the air hoses, and unloaded the NaHS.

The next day, Newsome went to an urgent-care clinic, where he was diagnosed only with a rash identified as "herpes zoster ('shingles')," and a hospital, "where no significant diagnoses or treatment [were] provided." The hospital records report that Newsome "denie[d] head trauma, headache, dizziness, nausea/vomiting, vision changes, neck pain, diaphoresis, weakness at present time, chest pain, [shortness of breath], fever and chills." Newsome did not visit another doctor until May 2019.

No. 24-20126

B

Newsome sued International Paper in March 2020 for negligence and gross negligence. His complaint describes a host of "life-threatening injuries . . . to his central nervous system, brain, and lungs/respiratory system" that generated physical pain, physical impairment, and mental anguish.

Newsome designated Dr. Daniel Snyder as his occupational safety expert. Dr. Snyder's opinion relied on several regulatory documents such as Occupational Safety and Health Administration (OSHA) and National Institute for Occupational Safety and Health (NIOSH) guidelines. Snyder summarized these guidelines and noted that $H_2S$ can be smelled at very low concentrations. Newsome also designated 30 treating physicians who were relied upon by Newsome's lifecare planner and who would opine on specific causation.

For its part, International Paper designated toxicologist Dr. John Kind as its expert. In his opinion, Dr. Kind recited the factors necessary to establish general and specific causation, explained the use of exposure reconstruction assessments, and summarized scientific literature including case studies of instances of exposure to $H_2S$ and animal studies. Dr. Kind also emphasized that Dr. Snyder never completed the scientifically accepted methodology to establish general or specific causation—the so-called Bradford Hill criteria.

International Paper moved for summary judgment in June 2023, asserting that (1) Newsome failed to provide admissible expert testimony that International Paper's conduct caused the incident, and (2) Newsome failed to provide expert testimony admissible under Texas law[1] to establish medical

---

[1] *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997).

causation for Newsome's alleged injuries. In his response to International Paper's motion—nearly eight months after the expert deadline and three months after the close of discovery—Newsome moved for additional time to designate a new expert, Dr. Stanley Haimes, on medical causation. International Paper opposed this motion.

The magistrate judge recommended that International Paper's motion for summary judgment be granted—due to Newsome's failure to establish general causation—and that Newsome's motion for additional time be denied for failure to demonstrate good cause. The district court agreed, adopted the report and recommendation in full, and entered judgment dismissing Newsome's claims. Newsome timely appealed both the grant of summary judgment to International Paper and the denial of Newsome's motion for additional time to designate another expert.

## II

We first address Newsome's contention that the district court erred in granting summary judgment to International Paper on causation grounds. We review summary judgment *de novo* and apply the same standard as the district court.[2] Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "We may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."[4]

---

[2] *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

[3] FED. R. CIV. P. 56(a).

[4] *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 165 (5th Cir. 2024) (quotation marks and citation omitted).

Because the district court had jurisdiction based on diversity, we apply Texas substantive law.[5]  Specifically, we assess medical causation based on *Merrell Dow Pharmaceuticals, Inc. v. Havner*.[6] Newsome argues that *Havner* doesn't require expert evidence to establish causation in this case and that he can raise a genuine dispute of material fact related to causation. As explained below, we disagree.

A

Step one is determining whether *Havner* applies to Newsome and, if so, what it requires. Texas courts recognize two means of proving causation. The first is "direct":

> In some cases, controlled scientific experiments can be carried out to determine if a substance is capable of causing a particular injury or condition, and there will be objective criteria by which it can be determined with reasonable certainty that a particular individual's injury was caused by exposure to a given substance.[7]

The second means of proving causation is "indirect":

> In the absence of direct, scientifically reliable proof of causation, claimants may attempt to demonstrate that exposure to the substance at issue increases the risk of their particular injury. The finder of fact is asked to infer that

---

[5] *Smith v. Christus Saint Michaels Health Sys.*, 496 F. App'x 468, 470 (5th Cir. 2012) ("When the district court exercises diversity jurisdiction over a dispute, we apply the substantive law of the forum state, which in this case is Texas." (citation omitted)).

[6] 953 S.W.2d 706; *see also, e.g.*, *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192–93 (5th Cir. 2011) (applying *Havner* to find "plaintiffs' evidence . . . insufficient to raise a genuine issue of fact as to whether there was a causal connection between the radiation exposure and the plaintiffs' claimed injuries").

[7] *Merck & Co., Inc. v. Garza*, 347 S.W.3d 256, 263 (Tex. 2011) (quoting *Havner*, 953 S.W.2d at 714–15).

because the risk is demonstrably greater in the general population due to exposure to the substance, the claimant's injury was more likely than not caused by that substance.[8]

To be clear, *Havner* does not apply to *every* toxic-tort or chemical-exposure case; *Havner* applies—and requires a plaintiff to prove both general and specific causation—only when there is no "direct, scientifically reliable proof of causation," which may or may not be available in any particular case.[9] As a result, in many chemical-exposure cases like this one, a plaintiff must show levels of exposure that are dangerous to humans generally (general causation) and that the *actual* level of exposure caused the plaintiff's injuries (specific causation).[10]

How can a plaintiff do that? As clarified by the Texas Supreme Court,

[E]stablishing causation in fact against a defendant . . . requires scientifically reliable proof that the plaintiff's exposure . . . more than doubled his risk of contracting the disease. A more than doubling of the risk must be shown through reliable expert testimony that is based on *epidemiological studies or similarly reliable scientific testimony*.[11]

Newsome contends that there is "direct" evidence of his injuries such that *Havner*'s rule requiring evidence of general and specific causation does

---

[8] *Id.* (quotation marks omitted) (quoting *Havner*, 953 S.W.2d at 715); *see also Havner*, 953 S.W.2d at 715 ("Such a theory concedes that science cannot tell us what caused a particular plaintiff's injury. It is based on a policy determination that when the incidence of a disease or injury is sufficiently elevated due to exposure to a substance, someone who was exposed to that substance and exhibits the disease or injury can raise a fact question on causation.").

[9] *Garza*, 347 S.W.3d at 263.

[10] *Havner*, 953 S.W.2d at 714–15.

[11] *Bostic v. Georgia-Pac. Corp.*, 439 S.W.3d 332, 350 (Tex. 2014) (emphasis added); *see also Garza*, 347 S.W.3d at 263 ("Often . . . [causation] can be proved only indirectly, *with epidemiological studies*." (emphasis added)).

not apply. In Newsome's view, "[t]he *Havner* exception applies to cases involving latent injuries, or where the connection between exposure and injury is not apparent and requires scientific extrapolation." And here, according to Newsome, "there is direct proof of causation as Newsome immediately lost consciousness, collapsed, and appeared to have a seizure" after he allegedly smelled a foul odor.

But Newsome misunderstands *Havner*'s "direct" evidence for temporal proximity. *Havner*'s primary, and favored, method of proving causation is a direct, "controlled scientific experiment."[12] None occurred here. Temporal proximity, on the other hand, "raises suspicion" of causation.[13] But suspicion alone is insufficient to demonstrate causation.[14]

To borrow Newsome's phrase, this case "requires scientific extrapolation" between some alleged exposure to an invisible gas and a long list of alleged injuries, none of which were asserted immediately after the supposed exposure. This case does not have a direct, scientific, controlled experiment to verify how Newsome was injured. Accordingly, *Havner* applies and requires Newsome to raise an issue of fact related to general and specific causation to survive summary judgment.

B

To establish medical causation, Newsome must first show general causation—"whether a substance is capable of causing a particular injury or

---

[12] *Garza*, 347 S.W.3d at 263 (quoting *Havner*, 953 S.W.2d at 714–15).

[13] *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007) ("Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation." (citations omitted)).

[14] *Id.*

condition in the general population."[15] In Texas, a plaintiff in a chemical-exposure or toxic-tort case subject to *Havner* must present expert testimony of causation,[16] and failing *Havner*'s requirements means failing *Daubert* as well.[17]

The heart of *Havner*'s requirement for expert evidence is reliability. In reviewing experts' opinions, we "must look beyond the bare opinions of qualified experts and independently evaluate the foundational data underlying an expert's opinion in order to determine whether the expert's opinion is reliable."[18] Additionally, even if the underlying data or studies are reliable, we "examine the design and execution of epidemiological studies using factors like the Bradford Hill criteria" to see if any biases may have "skewed the results of a study."[19] We must also ensure that these reliability standards are met by "at least two properly designed studies."[20]

Still, two properly designed studies alone are not enough. As we have previously recognized, "the law of Texas establishes the standard of

---

[15] *Havner*, 953 S.W.2d at 714.

[16] *See, e.g.*, *Guevara*, 247 S.W.3d at 665; *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996).

[17] *See Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 381 (5th Cir. 2010); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 593–95 (1993 (requiring an expert's testimony pertain to "scientific knowledge" and be reliable).

[18] *Garza*, 347 S.W.3d at 262 (citation omitted); *see also E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995) ("The trial court's role is not to determine the truth or falsity of the expert's opinion. Rather, the trial court's role is to make the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable. . . . [A] person with a degree should not be allowed to testify that the world is flat, that the moon is made of green cheese, or that the Earth is the center of the solar system." (citations omitted)).

[19] *Garza*, 347 S.W.3d at 266 (citation omitted).

[20] *Id.* (citation omitted).

causation as 'more-likely-than-not,'" which means that it is more probable than not—that is, "more than 50% likely[—]that the alleged wrongful conduct caused the injury."[21] And this requirement "of a more than 50% probability" requires that epidemiological evidence show that exposure more than doubles the risk of injury in the unexposed population.[22]

Although we view the reliability of expert testimony "in light of the totality of the evidence,"[23] "'[t]he totality of the evidence cannot prove general causation if it does not meet the standards for scientific reliability established by *Havner*. *A plaintiff cannot prove causation by presenting different types of unreliable evidence.*'"[24] But that is exactly what Newsome tries to do here.

First, take Newsome's expert, Dr. Snyder, and would-be expert, Dr. Haimes. Newsome contends that "substantial evidence from Dr. Snyder and Dr. Haimes" shows that "$H_2S$ is a known toxin to humans that can be lethal in even small doses." But our role is clear: Because Dr. Snyder's and Dr. Haimes's "expert opinion[s are] based on studies conducted by others, we must determine whether those underlying studies are scientifically reliable to support [their] conclusion[s]."[25]

Newsome provides a list of sources for Dr. Snyder's supposed "general causation" opinion: the International Labor Organization, OSHA, the Center for Disease Control and Prevention, NIOSH, and the Chemical

---

[21] *Young v. Mem'l Hermann Hosp. Sys.*, 573 F.3d 233, 236 (5th Cir. 2009).

[22] *Id.* (quoting *Havner*, 953 S.W.2d at 716).

[23] *McManaway v. KBR, Inc.*, 852 F.3d 444, 454 (5th Cir. 2017).

[24] *Id.* (emphasis added) (quoting *Garza*, 347 S.W.3d at 268).

[25] *Frias v. Atl. Richfield Co.*, 104 S.W.3d 925, 929 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Havner*, 953 S.W.2d at 713–14).

Safety Board. But these sources are exactly the kinds we have previously held unreliable because they use a lower threshold of proof "than that appropriate in tort law."[26] Even Dr. Snyder concedes that these organizations and resources focus on occupational safety and the protection of human health—they do not determine medical diagnoses or causal relationships. In *McManaway v. KBR, Inc.*, where a plaintiff purported to rely on epidemiological evidence such as NIOSH reports, the plaintiff was required to meet *Havner*'s reliability standard—two studies showing a doubling of the risk and statistical significance.[27] None of Dr. Snyder's sources meet that standard.

As for Dr. Haimes, even if his expert opinion were considered, Newsome would still fall short of what *Havner* requires. Dr. Haimes does not identify any epidemiological studies. Instead, he relies on the same type of occupational health sources as Dr. Snyder and on a report from the Agency for Toxic Substances and Disease Registry (ATSDR). But just like Dr. Snyder's sources, ATSDR reports "are simply not scientific evidence; that is, they are merely secondary literature that purports to rely on scientific studies."[28] And Dr. Haimes points to no epidemiological studies referenced or relied on in the ATSDR report that satisfy *Havner*. Instead, he highlights portions of the ATSDR report referring to "case reports" for particular individuals and a study with a self-selected sample size of just ten volunteers.

---

[26] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 464, 466 (5th Cir. 2012) (quoting *Allen*, 102 F.3d at 198) (holding that material data safety sheets and the OSHA safe exposure limits are unreliable to establish causation).

[27] 852 F.3d at 454 (finding that NIOSH's registry reports are "epidemiological evidence" that does not meet "the reliability threshold of *Havner* and its progeny" and cannot establish general causation).

[28] *LeBlanc ex rel. Est. of LeBlanc v. Chevron USA, Inc.*, 396 F. App'x 94, 100 (5th Cir. 2010) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (en banc)).

But experts' opinions are unreliable when they are based on case studies or small or biased samples.[29]

In a final attempt to salvage his claims, Newsome argues that International Paper's expert, Dr. Kind, conceded that "$H_2S$ exposure is known to cause the same symptoms described by Dr. Snyder." But Newsome misreads Dr. Kind's opinion.

First, Dr. Kind's opinion does not establish general causation for the same reason that Dr. Snyder's fails to do so: Dr. Kind summarizes individual case studies or animal studies, which International Paper asserts do not meet *Havner*'s standards for reliability.[30] Newsome does not point to or argue that any source in Dr. Kind's opinion *is* sufficiently reliable to meet *Havner*'s high bar, and we need not do Newsome's work for him.[31]

---

[29] *See, e.g.*, *Havner*, 953 S.W.2d at 724 (considering sample size as an indicator of reliability); *Sparling v. Doyle*, No. EP-13-CV-323-DCG, 2015 WL 4528759, at *20 (W.D. Tex. July 27, 2015) (finding plaintiff's expert's opinion unreliable "because the sample sizes are too small"), *objections overruled*, No. EP-13-CV-00323-DCG, 2016 WL 236266 (W.D. Tex. Jan. 20, 2016) (same); *United States v. Mouton*, No. 4:20-CR-00501, 2024 WL 98152, at *5 n.5 (S.D. Tex. Jan. 4, 2024) (noting a "study contains serious design defects that undermine its reliability," including its "small sample size"), *on reconsideration in part*, No. 4:20-CR-00501, 2024 WL 1545178 (S.D. Tex. Apr. 8, 2024).

[30] *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) (finding no abuse of discretion when district court rejected experts' reliance on animal studies that were dissimilar to facts presented, such as dose of exposure, concentration of exposure, and different types of cancer developed); *Johnson*, 685 F.3d at 463 ("We have previously recognized the very limited usefulness of animal studies when confronted with questions of toxicity. Accordingly, studies of the effects of chemicals on animals must be carefully qualified in order to have explanatory potential for human beings." (internal quotation marks and citations omitted)).

[31] *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (citations omitted)); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The *party opposing*

No. 24-20126

Second, even if Dr. Kind's sources were reliable, Dr. Kind emphasizes that Dr. Snyder did not perform the scientifically accepted Bradford Hill methodology to assess general causation—and Dr. Kind didn't perform the methodology on his behalf.[32]

Third, Dr. Kind's summary of research shows the wide range of doses that may—or may not—cause certain symptoms, which undermines Dr. Snyder's opinions on the association between certain doses of exposure and symptoms. Newsome does not respond to such arguments, aside from generally asserting: (1) Dr. Kind never "discounts" his reliance on the literature; (2) Dr. Kind can unintentionally establish general causation; (3) Newsome can use unintentional admissions; and (4) "IP fails to support [the conclusion that Dr. Kind's statements do not comply with *Havner*] with authority, presumably because there is not any authority that could support it." Even if these arguments were true, regardless of which expert opines, the heart of the *Havner* causation inquiry is whether the sources the experts use are sufficiently reliable for the jury's use. Neither expert's sources or methodologies pass muster under Texas law to establish general causation for Newsome's alleged injuries.

In sum, Newsome cannot cobble together unreliable evidence to raise an issue of fact regarding general causation. And a lack of general causation

---

*summary judgment* is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." (emphasis added)).

[32] *Garza*, 347 S.W.3d at 266 (requiring courts to assess "sound methodology" using factors and tests such as the "Bradford Hill criteria to reveal any biases that might have skewed the results of a study, and to ensure that the standards of reliability are met in at least two properly designed studies").

evidence is fatal to Newsome's claims.[33] Accordingly, we affirm summary judgment for International Paper.

## III

We next turn to Newsome's argument that the district court abused its discretion when it denied his motion for additional time to designate another expert—Dr. Haimes.

Federal Rule of Civil Procedure 16(b) "authorizes the district court to control and expedite pretrial discovery through a scheduling order."[34] Rule 16(b) also allows the district court to modify the schedule for good cause and with the judge's consent.[35] Consistent with this authority, we have recognized the district court's "broad discretion to preserve the integrity and purpose of the pretrial order."[36]

Newsome filed his motion on July 15, 2023—nearly eight months after the expert deadline, three months after the discovery deadline, a month after International Paper filed dispositive motions (including the motion for summary judgment in this appeal), and two months before trial. The district

---

[33] *See, e.g.*, *Wells*, 601 F.3d at 378 ("[A] plaintiff must establish general causation before moving to specific causation. Without the predicate proof of general causation, the tort claim fails."); *Carter v. Southstar Mgmt., LLC*, No. CV-H-17-727, 2018 WL 5281791, at *3 (S.D. Tex. Oct. 24, 2018) ("A court is not required to make a determination on the admissibility of specific causation evidence, if there is no admissible general causation evidence." (citation omitted)).

[34] *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990); *see* Fed. R. Civ. P. 16(b).

[35] *See* Fed. R. Civ. P. 16(b)(5).

[36] *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (internal quotation marks and citation omitted).

court denied Newsome's motion, so we must determine whether it abused its "broad discretion."[37]

We consider four factors when reviewing a district court's "discretion to exclude evidence that was not properly designated": "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[38] We do not disturb a district court's ruling enforcing a pretrial order "absent a clear abuse of discretion."[39]

First, Newsome's explanation for failing to meet the district court's deadlines was insufficient. He was required to show "that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension."[40] Whether Newsome gave the district court—which is far closer to the parties than we are—a sufficient explanation is soundly within the district court's broad discretion.[41] But even if it weren't, Newsome's sole explanation for his tardiness was that he only "learn[ed] of the potential need for an additional expert" to opine on causation in this chemical-exposure case after International Paper moved for summary judgment on the issue. That is

---

[37] *Id.*

[38] *Stewart v. Gruber*, No. 23-30129, 2023 WL 8643633, at *4 (5th Cir. Dec. 14, 2023) (quoting *Geiserman*, 893 F.2d at 791).

[39] *Geiserman*, 893 F.2d at 790 (citing *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)); *see also Book v. Nordrill, Inc.*, 826 F.2d 1457, 1461 (5th Cir. 1987).

[40] *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)); *see also Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

[41] *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288 (5th Cir. 1991) ("District courts are given broad discretion in determining whether to exclude expert testimony when a party has failed to designate such witnesses in accordance with pretrial orders." (citation omitted)).

not a sufficient explanation. As the district court recognized, "[m]ere inadvertence on the part of the movant, even when coupled with the absence of prejudice to the non-movant, is insufficient to establish good cause."[42] Indeed, under Rule 16(b), "inadvertence" is "tantamount to no explanation at all."[43]

Second, Dr. Haimes's opinion is not as "important" as Newsome alleges, primarily because it still fails to meet *Havner*'s strict requirements.[44] And contrary to Newsome's argument and reliance on *Betzel v. State Farm Lloyds*,[45] "the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines."[46] We have criticized *Betzel* as inconsistent with longstanding Fifth Circuit precedent and our rule of orderliness, and we affirmed a trial court's conclusion that where an expert is crucial to the plaintiff's case, it "only underscores the importance of plaintiffs' compliance with the court's deadlines."[47]

Third, permitting Newsome to designate Dr. Haimes would prejudice International Paper. Contrary to Newsome's assertions in his brief, trial was set at the time he filed his motion, and the parties completed their pre-trial

---

[42] *Akpan v. United States*, No. CV-H-16-2981, 2017 WL 6527427, at *2 (S.D. Tex. Dec. 21, 2017).

[43] *S&W Enters.*, 315 F.3d at 535–36.

[44] *Ante*, at 12–13.

[45] 480 F.3d 704, 707–08 (5th Cir. 2007) (concluding that where the plaintiff's expert was essential to its case, the "importance" factor weighed in favor of permitting a late designation).

[46] *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996); *see also Geiserman*, 893 F.2d at 791–93.

[47] *Stewart*, 2023 WL 8643633, at *4–5.

filings, including the joint pretrial order, witness lists, exhibit lists, and jury charge in August 2023, while the motion was pending. We have observed that designating an expert witness only two weeks after the deadline to do so "disrupt[ed] the court's discovery schedule and the opponent's preparation."[48] Here, the delay is *months*-long, not merely weeks-long, with a trial scheduled. Amending a deadline—particularly *eight months* after the expert deadline—prejudices an "opponent's preparation" and increases the "expense" of the litigation.[49] And "[e]ven when 'the degree of prejudice suffered by the [proponent] due to the late designation would not have been great, a district court still has the discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order.'"[50] Accordingly, even if the degree of prejudice International Paper would suffer is not "great," the district court here retained broad discretion to control scheduling and to sanction failures to follow its scheduling order.

Finally, a continuance would not avoid prejudice to International Paper. Indeed, "such a remedy would have entailed additional expense" to International Paper "and further delayed its day in court."[51] No continuance would prevent the increased expense of reviewing and responding to a new expert, preparing for and deposing that expert, and potentially preparing rebuttal opinions—before, if needed, re-drafting and re-filing dispositive motions which had already been completed. The significant delay and lackluster explanation for that delay suggest "dilatory behavior," and "a

---

[48] *Id.* at *6 (quoting *Geiserman*, 893 F.2d at 791).

[49] *Geiserman*, 893 F.2d at 791; *see also, e.g.*, *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997); *Barrett*, 95 F.3d at 381.

[50] *Stewart*, 2023 WL 8643633, at *6 (alteration in original) (quoting *1488, Inc.*, 939 F.2d at 1288–89).

[51] *1488, Inc.*, 939 F.2d at 1289.

continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders."[52]

In short, as we have stated before, "[t]he district court established a reasonable deadline for designating expert witnesses, and we are loath to interfere with the court's enforcement of that order. Adherence to such scheduling orders [is] critical in maintaining the integrity of judicial proceedings."[53] The district court did not abuse its discretion in denying Newsome's request to designate expert witnesses out of time.

## IV

Because Newsome failed to establish general causation with reliable expert evidence as required by Texas law, we AFFIRM summary judgment for International Paper. Additionally, because the district court did not abuse its discretion, we AFFIRM the denial of Newsome's motion for additional time to designate another expert witness.

---

[52] *Geiserman*, 893 F.2d at 792.

[53] *1488, Inc.*, 939 F.2d at 1289; *see also Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 836 (5th Cir. 2015) (noting this court "will not lightly disturb a court's enforcement of [these] deadlines . . ." (citation omitted)).