# United States Court of Appeals for the Fifth Circuit

———————

No. 23-50123

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2024

Lyle W. Cayce
Clerk

Sheet Pile, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Plymouth Tube Company, USA,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-18

_____

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

This business dispute concerns an exclusivity agreement between PilePro LLC, now Sheet Pile LLC, and Plymouth Tube Company. In 2011, PilePro and Plymouth contractually agreed that Plymouth would manufacture certain products exclusively for PilePro. About a decade later, PilePro's successor-in-interest and assignee, Sheet Pile, accused Plymouth of selling those products to other companies and sued for fraud and breach of contract. Plymouth successfully moved for summary judgment, and we AFFIRM.

No. 23-50123

## I

Plymouth and PilePro (now Sheet Pile) are players in the market for sheet pile connectors, which are steel sheets used to create walls that shore up dirt or water on construction projects. Plymouth manufactures and sells these connectors, and companies like PilePro and Sheet Pile buy and distribute them.

In 2011, Plymouth and "PilePro LLC (together with its subsidiary and affiliates, including but not limited to PilePro Steel, L.P. 'PilePro')" contractually agreed, in part, that Plymouth would not "manufacture any type of extruded steel profile or connector . . . ('Exclusivity Products') for any person or entity other than PilePro" until December 12, 2021 ("Exclusivity Agreement").[1] We follow the Exclusivity Agreement's lead in using "PilePro" to refer collectively to PilePro LLC and PilePro Steel, L.P., unless otherwise specified.

The years following Plymouth and PilePro's 2011 Exclusivity Agreement were far from frictionless. We begin by recounting, in roughly chronological order, the underlying dispute between PilePro and Plymouth.

## A

Between 2014 and 2015, Plymouth sent PilePro four different emails and letters that are related to the Exclusivity Agreement and relevant here.

*First*, on August 11, 2014, Plymouth sent PilePro a letter stating that it would "no longer manufacture the Exclusivity Products." It said that it "shall continue to honor" other remaining obligations in the Exclusivity

---

[1] The parties initially contracted in 2004 and modified this contract with the 2011 Exclusivity Agreement. Only the 2011 Exclusivity Agreement is at issue here.

No. 23-50123

Agreement, impliedly including its obligation not to manufacture and sell Exclusivity Products to anyone but PilePro.

*Second*, on April 20, 2015, Plymouth emailed PilePro after PilePro began defaulting on payments for previously purchased Exclusivity Products. Plymouth wrote in relevant part:

> [A]s a result of what can only be deemed bad faith by [PilePro] in refusing payment for goods purchased and for failing to honor the [separate] Indemnity Agreement[2] we must now consider if such actions are a breach of the [Exclusivity] Agreement between us which would free us, if we so desired, to get back into the business and sell [to] anyone we so chose. Now we are **not inclined to do this for we do not want to get back into the business, but if you[r] client will not protect us under the agreement, why should we protect your client.**

*Third*, on July 13, 2015, Plymouth sent PilePro a letter stating that it intended to terminate the Exclusivity Agreement because of (1) PilePro's alleged failure to indemnify Plymouth in a separate suit and (2) PilePro's failure to pay for Exclusivity Products it had already purchased.

*Fourth*, Plymouth sent PilePro a follow-up letter that it was exercising its alleged right to terminate the Exclusivity Agreement, effective November 12, 2015.[3]

---

[2] Plymouth alleged that PilePro was contractually obligated to indemnify Plymouth in a separate suit brought by Skyline Steel LLC, discussed below. This indemnity provision is not relevant to this appeal and is referenced here only for completeness.

[3] Sheet Pile argues on appeal that Plymouth did not terminate the agreement because Plymouth's bases for termination were not among the permissible bases outlined in the Exclusivity Agreement. Plymouth does not argue the point, and neither party fully briefs this issue. Because we can resolve this appeal on other grounds argued by the parties, we need not address whether Plymouth successfully terminated the agreement.

No. 23-50123

B

On October 1, 2015, Plymouth sued PilePro Steel, L.P., in Illinois state court after PilePro failed to pay for previously purchased Exclusivity Products. PilePro Steel removed the suit to federal court. *See Plymouth Tube Co. v. Pilepro Steel, LP*, No. 15 C 10353, 2017 WL 4707454 (N.D. Ill. Oct. 19, 2017).

In April 2016, PilePro Steel filed several counterclaims, including a claim that Plymouth had breached the Exclusivity Agreement by manufacturing Exclusivity Products for third parties. It amended its counterclaims on July 6, 2016, but then abandoned them in October 2016. The district court ultimately granted Plymouth's motion for summary judgment. PilePro did not appeal.

C

Meanwhile, in March 2016, Plymouth settled a separate suit brought by another entity, Skyline Steel LLC. This suit is relevant only to the extent that, as part of the settlement agreement, Plymouth agreed to manufacture Exclusivity Products for Skyline and began doing so in June 2016.

D

A few years later, in 2019, PilePro LLC declared bankruptcy. Sheet Pile then purchased PilePro LLC's assets and was "assign[ed] . . . any and all of [PilePro LLC's] claims and defenses . . . against Plymouth . . . related to

4

any pre-petition activities of [PilePro LLC] other than related to the Intellectual Property."

### E

Now for this case.

As PilePro LLC's assignee, Sheet Pile sued Plymouth in Texas state court on November 24, 2020, for allegedly selling Exclusivity Products to third parties in breach of the Exclusivity Agreement and for fraudulently representing in 2014 and 2015 that it was not manufacturing Exclusivity Products. Plymouth removed the case to federal court based on diversity jurisdiction.

Plymouth moved for summary judgment on both of Sheet Pile's claims. The district court adopted the magistrate judge's report and recommendation and granted Plymouth's motion. It concluded that Sheet Pile's breach-of-contract claim was barred by Texas's four-year statute of limitations, and, alternatively, by res judicata based on its breach-of-contract counterclaim in the Illinois action. It held that the fraud claim was also time-barred, and, alternatively, that Sheet Pile did not show a genuine dispute of material fact to survive summary judgment.

Sheet Pile timely appealed.

### II

The rules for reviewing summary judgment are familiar and well settled. "We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor."[4] Summary judgment is appropriate only when "the movant shows that there is no genuine dispute

---

[4] *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007).

as to any material fact and the movant is entitled to judgment as a matter of law."[5] "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court."[6]

## A

We start with Sheet Pile's breach-of-contract claim.

Sheet Pile alleges that Plymouth breached the Exclusivity Agreement by selling Exclusivity Products to third parties beginning in June 2016. Plymouth responds that it is entitled to summary judgment because Sheet Pile's breach-of-contract claim is barred by (1) the statute of limitations and, alternatively, (2) res judicata based on PilePro's Illinois breach-of-contract counterclaim. Plymouth's limitations defense is dispositive.

Under Texas law, a breach-of-contract claim is subject to a four-year statute of limitations.[7] To succeed on its limitations defense, Plymouth "must (1) conclusively prove when [Sheet Pile's] cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised."[8] A cause of action normally accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[9] Accordingly, "a

---

[5] Fed. R. Civ. P. 56(a).

[6] *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001).

[7] Tex. Civ. Prac. & Rem. Code § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (per curiam).

[8] *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

[9] *Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

cause of action for breach of contract accrues at the moment the contract is breached."[10]

But there's a narrow exception[11]: "[W]hen the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable,"[12] Texas's discovery rule "defers accrual of [the] cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to [the] cause of action."[13] "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence."[14] Texas courts "determine whether an injury is inherently undiscoverable on a categorical basis because such an approach 'brings predictability and consistency to the jurisprudence.'"[15] "[T]o avoid defeating the purposes behind the limitations statutes," the Texas Supreme Court "ha[s] restricted the discovery rule to exceptional cases."[16]

Sheet Pile contends that Texas's discovery rule applies and defers accrual until PilePro discovered in 2017 or 2018 that Plymouth sold

---

[10] *Id.* (citing *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015)).

[11] *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) (observing that the Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes")

[12] *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455–56 (Tex. 1996)).

[13] *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008) (alteration adopted) (quoting *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

[14] *Horwood*, 58 S.W.3d at 734–35 (citing *S.V.*, 933 S.W.2d at 7).

[15] *Id.* at 735 (quoting *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001)).

[16] *Via Net*, 211 S.W.3d at 313.

No. 23-50123

Exclusivity Products to third parties.[17] Whether the discovery rule applies is a question of law[18] that we answer as would the Supreme Court of Texas.[19]

Without the discovery rule, Sheet Pile's breach-of-contract claim accrued in June 2016, when Plymouth began selling Exclusivity Products to Skyline. That's more than four years before Sheet Pile filed suit in November 2020. Sheet Pile's breach-of-contract claim is thus time-barred under Texas's normal accrual rules.[20]

We decline Sheet Pile's request to apply the discovery rule here. Although the Texas Supreme Court has not held that the discovery rule is categorically inapplicable to breach-of-contract injuries, Sheet Pile points to no Texas case applying it, and we have found none.[21] Ruling as we think Texas courts would,[22] we conclude that Sheet's Pile's breach-of-contract

---

[17] Roberto Wendt, the owner and managing member of Sheet Pile LLC, stated in his declaration that "[i]t was not until . . . 2017[] that PilePro learned of the sales." But in its opening brief, Sheet Pile alleges that it did not discover Plymouth's third-party sales until 2018.

[18] *Aon Re, Inc.*, 521 F.3d at 357.

[19] *See id.* at 361 ("It is our duty, however, to rule on this Texas state law issue as would the Texas courts." (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938))).

[20] *See* Tex. Civ. Prac. & Rem. Code § 16.051.

[21] In an unpublished, per curiam opinion, a previous panel of this court cited *Via Net* for the unequivocal rule that Texas's "discovery rule does not apply to breach of contract . . . claims." *Jeanbaptiste v. Wells Fargo Bank*, No. 14-10671, 2014 U.S. App. LEXIS 21468, at *5 (5th Cir. Nov. 7, 2014) (per curiam). That panel went too far. Although the Texas Supreme Court has yet to apply the discovery rule to a breach of contract, it has not foreclosed that possibility. *See Via Net*, 211 S.W.3d at 314 ("We do not hold today that the discovery rule can never apply to breach of contract claims."); *see also Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439–40 (5th Cir. 2009) (citing *Via Net*, 211 S.W.3d at 314).

[22] *See Aon Re, Inc.*, 521 F.3d at 361.

injury was not inherently undiscoverable and thus cannot surpass Texas's high bar for deferral under the discovery rule.

Had it acted diligently, PilePro (now Sheet Pile[23]) would have discovered Plymouth's alleged breach within the limitations period. For contracting parties such as PilePro, "due diligence requires that [it] protect its own interests" by, for example, "asking [its] contract partner for information needed to verify contractual performance."[24] "[F]ailing to even ask for such information is not due diligence."[25] PilePro never asked Plymouth to disclose its sales—despite knowing that Plymouth threatened in 2015 to sell to third parties, receiving Plymouth's purported termination of the Exclusivity Agreement in 2015, and filing and amending a breach-of-contract counterclaim in 2016. If it had, PilePro would have learned of any third-party sales, or, if Plymouth refused to disclose that information, Plymouth's fraudulent concealment would have deferred accrual.[26] "While

---

[23] As PilePro LLC's assignee, Sheet Pile cannot get the benefits of the discovery rule by arguing that it could not have been aware of Plymouth's alleged 2016 breach because it did not purchase PilePro's assets until 2019. "Because an assignee [here, Sheet Pile] stands in the shoes of the assignor [here, PilePro LLC], [Sheet Pile] was subject to the statute of limitations as it applied to [PilePro's] independent actions for breach . . . ." *See Goose Creek Consol. Indep. Sch. Dist. of Chambers & Harris Counties. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 493 (Tex. App.—Texarkana 2002, pet. denied), *abrogated on other grounds by Duffey v. Sleep Ctr. of Longview*, 598 S.W.3d 711 (Tex. App.—Texarkana 2020, no pet.).

[24] *See Via Net*, 211 S.W.3d at 314.

[25] *Id.*; *see also Beavers*, 566 F.3d at 440 ("The Texas cases establish that, at a minimum, due diligence would require the appellants to request information to verify MetLife's performance of its contractual duties.").

[26] *See Beavers*, 566 F.3d at 441. Sheet Pile doesn't expressly argue fraudulent concealment to rebut Plymouth's statute-of-limitations defense. But to the extent we can construe Sheet Pile's fraud claim as alleging that Plymouth fraudulently concealed its contractual breach, it fails. As we explain below, Sheet Pile has not raised a genuine dispute of material fact that Plymouth made a false representation in 2014 or 2015 to conceal its sales to third parties. *See Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. App.—Houston

No. 23-50123

the facts of this specific case do not govern the categorical inquiry, they are not atypical"[27]; there will often be some number of red flags, like those here, that would prompt a sophisticated party such as PilePro to inspect the other party's contractual performance.[28] Because Sheet Pile should have discovered any breach "during the relatively long four-year limitations period" had it acted diligently, this type of breach-of-contract injury is not inherently undiscoverable.[29] We thus conclude that the Texas Supreme Court would not apply the discovery rule here.[30]

Sheet Pile makes one last attempt to avoid Plymouth's limitations defense. It argues that the limitations period began anew each time Plymouth sold Exclusivity Products to a third party, meaning that any alleged third-party sales within four years of its November 2020 suit aren't time-barred. However, Sheet Piled forfeited this "serial breach" argument because it failed to present it to the magistrate judge.[31]

---

[14th Dist.] 2008, pet. denied) ("To prove fraudulent concealment, a plaintiff must demonstrate the defendant had (1) actual knowledge that a wrong occurred; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong."); *Shah v. Moss*, 67 S.W.3d 836, 846 (Tex. 2001) ("To avoid summary judgment on limitations grounds, Moss must have raised a fact issue to support his fraudulent-concealment assertion."); *Marcus & Millichap Real Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 463 (Tex. 2023) (per curiam) (same).

[27] *See Via Net*, 211 S.W.3d at 314.

[28] *See generally JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648 (Tex. 2018) (discussing red flags and sophistication in the context of justifiable reliance); *Nooner Holdings, Ltd. v. Abilene Vill., LLC*, 668 S.W.3d 956 (Tex. App.—Eastland 2023, pet. denied) (same).

[29] *See Via Net*, 211 S.W.3d at 315.

[30] *See Beavers*, 566 F.3d at 440–41.

[31] *See Lewis v. Ascension Par. Sch. Bd.*, 662 F.3d 343, 348 (5th Cir. 2011) (per curiam) ("This argument is waived because it was not presented to the magistrate judge . . . .").

Even if Sheet Pile hadn't forfeited the argument, it would have failed on the merits. Texas courts have recognized serial accrual of breaches in a few discrete instances, none of which apply here: (1) when the breach is of an installment contract[32]; (2) when the "defendant's wrongful conduct caused temporary (as opposed to permanent) injuries to real property"[33]; and (3) in the "very limited circumstance[]" when the same wrongful conduct causes "distinct legal injuries,"[34] as when exposure to asbestos gives rise to "separate disease[s]" that "manifest years or even decades apart."[35] The Exclusivity Agreement is not an installment contract, which eliminates (1). And the suit here doesn't turn on the longevity of Sheet Pile's injury, so (2) is out too. As for (3), Sheet Pile didn't suffer distinct legal injuries each time Plymouth allegedly sold Exclusivity Products to third parties. Unlike the "separate disease[s]" that may arise at different times following asbestos exposure, any later-in-time third-party sales wouldn't have inflicted a type of injury that was separate and distinct from that caused by earlier sales.[36] Rather, because Plymouth's alleged third-party sales would have violated the same exclusivity provision in the Agreement, each would have inflicted the same type of injury. So once Plymouth allegedly breached the Exclusivity Agreement in June 2016, PilePro had an actionable claim, and any subsequent third-party sales by Plymouth would have only added to PilePro's existing

---

[32] *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 446 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

[33] *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 817 (Tex. 2021).

[34] *Id.* (citing *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 653 (Tex. 2000)).

[35] *Pustejovsky*, 35 S.W.3d at 652–53.

[36] *See id.*

damages.[37] Accordingly, one—and only one—limitations period began to run in June 2016.[38]

Because Plymouth has established that Sheet Pile's breach-of-contract claim is time-barred, it is entitled to summary judgment. We therefore need not reach Plymouth's argument that Sheet Pile's claim is barred by res judicata.

B

We turn next to Sheet Pile's fraud claim.

Sheet Pile contends that Plymouth represented in its 2014 letter and 2015 email that it was not selling Exclusivity Products; that, in reliance on those statements, it purchased those products from other suppliers at a higher cost; and that Plymouth nonetheless began selling Exclusivity Products to third parties in mid-2016, which it did not discover until 2017 or 2018. Plymouth, in turn, argues that it is entitled to summary judgment

---

[37] *Cf. Smith v. Fairbanks, Morse & Co.*, 102 S.W. 908, 909 (Tex. 1907) ("[T]he original breach of the contract . . . would have given a right of action at once, including the right to recover all such damages as proximately resulted, whether they had then accrued or not, and that limitation would therefore have run from the time of that breach.").

[38] This makes sense as a matter of efficiency. Once Sheet Pile knew—or should have known with reasonable diligence—that Plymouth was breaching the Exclusivity Agreement, it should have sued for breach of contract to mitigate its damages. *Cf. Cosgrove*, 468 S.W.3d at 40 ("Allowing them to slumber on this knowledge . . . before seeking a corrected deed is not a luxury we have recognized, and would render meaningless parties' recognized duty to exercise diligence in examining their mineral rights.").

No. 23-50123

because Sheet Pile's fraud claim (1) is barred by the statute of limitations, and, alternatively, (2) fails on the merits as a matter of law.

Even if the fraud claim isn't time-barred,[39] summary judgment is proper because it fails on the merits.[40] Actionable fraud requires that (1) Plymouth "made a material representation that was false"; (2) Plymouth "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) Plymouth "intended to induce [PilePro] to act upon the representation"; and (4) PilePro "actually and justifiably relied upon the representation and suffered injury as a result."[41] Sheet Pile has not created a genuine dispute of material fact that Plymouth's 2014 and 2015 representations—that Plymouth was not then selling Exclusivity Products to third parties—were false when made or were made in reckless disregard of their truth.[42] There is no evidence that Plymouth sold Exclusivity Products to third parties in 2014 or 2015—Sheet Pile even concedes as much. Nor is there evidence that Plymouth told PilePro

---

[39] Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (stating that the statute of limitations for fraud claims is four years).

[40] Because limitations is an affirmative defense, not a jurisdictional requirement, we need not reach it. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010).

[41] *See JP Morgan Chase Bank*, 546 S.W.3d at 653 (internal quotation marks omitted) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

[42] *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 339 (Tex. 2011) ("We conclude that as a matter of law, Powell's representations were actionable, and legally sufficient evidence existed to demonstrate that they *were known to be false when made*." (emphasis added)); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) ("A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false *when made* or was asserted without knowledge of its truth[] . . . ." (emphasis added) (internal quotation marks and citation omitted)).

No. 23-50123

it wouldn't sell Exclusivity Products to third parties despite plans to do so.[43] Rather, in its 2015 email, Plymouth expressly warned PilePro that it *might* begin selling to third parties if PilePro didn't hold up its end of the bargain. Sheet Pile cannot now act surprised that Plymouth later followed through with that threat. Accordingly, Sheet Pile has failed to create a genuine dispute of material fact on the first element of its fraud claim. Plymouth is thus entitled to summary judgment.

\*     \*     \*

Accordingly, we AFFIRM summary judgment for Plymouth.

---

[43] *See Formosa Plastics Corp.*, 960 S.W.2d at 46 ("[A] fraud claim can be based on a promise made with no intention of performing . . . .").