# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2025

Lyle W. Cayce
Clerk

No. 24-60546

———

Stanley Wood, *Individually, and on Behalf of a Class of Similarly Situated Persons*; Chastity Wood, *Individually, and on Behalf of a Class of Similarly Situated Persons*,

*Plaintiffs—Appellants*,

*versus*

North Mississippi Medical Center, Incorporated; Tupelo Service Finance, Incorporated; North Mississippi Health Services, Incorporated; North Mississippi Clinics, L.L.C.,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:20-CV-42

———————————————————

Before Stewart, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

This case involves a dispute over medical bills. Believing they were victims of unlawful billing practices, Stanley and Chastity Wood sued North

———

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60546

Mississippi Health Services, Inc., its subsidiaries North Mississippi Medical Center, Inc. and North Mississippi Clinics, L.L.C., and debt collectors Tupelo Service Finance, Inc. and Alliance Collection Service, Inc., asserting a variety of state and federal claims.

On appeal, the Woods challenge the district court's grant of summary judgment in favor of the appellees on claims under Mississippi law for breach of contract, fraud and misrepresentation, and civil conspiracy.

For the reasons explained below, we AFFIRM.

I

In 2017, Chastity Wood received non-emergent treatment in Tupelo, Mississippi at the North Mississippi Medical Center, Inc. ("Medical Center") and North Mississippi Clinics, L.L.C. ( "Clinics"), entities owned by North Mississippi Health Services, Inc. (collectively, with Medical Center and Clinics, the "Health Providers"). At the time, Chastity was covered by an employee benefits plan (the "Plan"). The Plan did not have an in-network agreement with the Health Providers, but Chastity asserts that the doctor from whom she received treatment was in-network. When Chastity went for treatment, she presented her Plan card. The receptionist accepted the Plan card for copying and returned it to Chastity, leaving her with the impression her treatment would be covered by the Plan since no treatment costs were discussed. The Plan card included the following language:

> The Plan will only consider an [a]ssignment of [b]enefits . . . valid under the condition that the Provider accepts the payment received from the Plan as consideration in full . . . .

> [An assignment of benefits] is a waiver of the Provider's right to balance bill the patient. Depositing checks received from the Plan represents accord and satisfaction and will take precedence over any previous terms.

Before receiving treatment, Chastity signed a consent form, which included an assignment of benefits provision providing that the Medical Center could send bills directly to the Plan and obtain payment from it. The consent form also included a section entitled "Financial Responsibility," which stated that Chastity was "financially responsible to the Hospital[s] for all charges not covered or paid by insurance," and also noted that such charges "are payable upon demand."

Following each non-emergent procedure, the Health Providers submitted claims directly to the Plan, the Plan paid a portion of those bills, and the Health Providers subsequently billed Chastity for any outstanding charges for the out-of-network treatment she received. Chastity characterizes the bills she received as "surprise balance bills," whereas the Health Providers assert that Chastity should have expected such "balance bills" because she agreed to receive them through the terms of her Plan and by signing the consent form before each procedure.

In February 2017, Chastity enlisted Health Cost Solutions, her plan administrator, operating through another entity to negotiate the balance she owed. Months later, on September 25, the Health Providers refunded a charge partially covered by the Plan and demanded payment in full by Chastity after concluding they "[could not] accept what her insurance is offering." The Health Providers went on to convey their intent to "refund any payments this insurance company has already made . . . so that we may bill the patient."

In total, the Health Providers demanded Chastity pay almost $50,000.00. Her balance remained unpaid for an extended period of time, so the Health Providers enlisted Tupelo Service Finance to begin the payment collection process. Chastity's medical debt was eventually assigned to

No. 24-60546

Alliance Collection Service, Inc. ("Alliance Collection"), which operates as a debt collector.

In March 2019, however, the Medical Center offered Chastity a twenty percent reduction in the amount she owed if she agreed to satisfy her medical debt within three weeks by April 1, 2019, just days ahead of the federal tax filing deadline (the "Tax-Time Deal"). Chastity inquired about the amount she owed with the Health Providers, and they provided her with a sum. Believing this sum represented her total medical debt, the Woods paid the discounted balance to the Medical Center after obtaining a home equity loan.

But a clerical error led to more chaos. The Medical Center later realized it inadvertently had left $8,936.05 owed to Alliance Collection out of the Tax-Time Deal. The Health Providers then requested Chastity pay the overlooked balance, offering the same discount on the remaining amount.

The Woods refused to pay the overlooked balance and instead filed a putative class action complaint against the Health Providers, Tupelo Service Finance, Alliance Collection, and John Does.[1] They asserted claims—in relevant part on appeal—for (1) breach of contract, (2) fraud and misrepresentation, and (3) civil conspiracy.[2] At summary judgment, the district court ruled in favor of the Health Providers on all three claims.

The Woods timely appealed.

_____

[1] The overlooked balance amount has not been paid by the Woods, and the Health Providers do not seek to recoup the debt in this action.

[2] The district court dismissed the Woods' claims alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1693p, and a Mississippi statute detailing mandatory insurance policy provisions. MISS. CODE ANN. § 83-9-5. All claims against Alliance were dismissed. The district court nonetheless retained supplemental jurisdiction over the remaining state law claims at issue. *See* 28 U.S.C. § 1367(a).

## II

The rules for reviewing summary judgment are familiar and well settled. "We review summary judgment de novo and apply the same standard as the district court." *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 761 (5th Cir. 2024). We apply Mississippi substantive law in this diversity case, and likewise, "a district court's interpretation of state law is reviewed de novo." *Franklin v. Regions Bank*, 125 F.4th 613, 622 (5th Cir. 2024).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). We "must view the evidence in the light favorable to the party opposing judgment" and reverse the district court only when genuine disputes of material fact exist. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 518, 520 (5th Cir. 2021). In the absence of such a scenario, "[w]e may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 165 (5th Cir. 2024) (quotations omitted).

## III

### A

We first consider whether the Health Providers were entitled to summary judgment on their claim for breach of contract.

At the outset, the district court took issue with the Woods' evolution in their theory of how the Health Providers breached the contract. The court observed that "the Woods have . . . abandoned their breach of contract theory arising out of the assignment of benefits in favor of their accord and satisfaction theory," before ruling that "[a] claim which is not raised in the

complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."[3]

We see things differently. As a general matter, a changed *theory* does not necessarily create a new *claim*. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A party must also "plead each element of the claim that they are trying to bring" to be properly before a court. *Barron v. United States*, 111 F.4th 667, 673 (5th Cir. 2024).

We accordingly look to Mississippi law for the elements of the Woods' claim. In that state, "a breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 497 (5th Cir. 2019) (cleaned up) (quoting *Maness v. K&A Enters. of Miss.*, 250 So. 3d 402, 414 (Miss. 2018)).

In the Woods' brief opposing summary judgment, they argued Chastity was a third-party beneficiary to an accord and satisfaction agreement between the Health Providers and the Plan—an agreement purportedly breached when the Health Providers accepted the Plan's conditional payments before reimbursing the Plan and subsequently balance billing Chastity.

The Woods claimed third-party status, in other words, to a *new agreement* substituted for an *old contract* which had been discharged by the

---

[3] *See Cutrera v. Bd. of Supporters of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

breach. Such a proposition is indeed different than contending a party breached a *preexisting contract*, like the Woods pleaded in their complaint—specifically, identifying an alleged breach of an agreement between the Health Providers and the Plan. But this theory of liability did not transform the claim for breach of contract properly pleaded against the Health Providers, into a separate and distinct one raised at an improper stage.

Assuming the Woods have properly shown each element of a breach-of-contract claim, our primary concern is then whether the Health Providers received "fair notice" of the claim asserted against them. *See* FED. R. CIV. P. 8(a)(2). The Woods' different theories of liability both identified a common cause of action against a common party. Both theories also involved identical transactions and commonly referenced the Woods' third-party beneficiary status to the allegedly breached agreement.[4] These commonalities provided sufficiently "fair notice" to satisfy Rule 8(a)(2).

To be sure though, the district court considered the Woods' argument on the merits in the alternative. The court surmised that "[e]ven if the Woods did plead a third-party breach of contract claim arising out of an accord and satisfaction agreement in their Amended Complaint, they provide no authority—and the Court is aware of none—that an accord and satisfaction is a cause of action rather than an affirmative defense."

---

[4] The district court was convinced the Woods "abandoned" their argument that "a contract existed between the Hospital Defendants and the Plan" over the course of the litigation after their briefing suggested that a contract instead existed between Chastity and the Health Providers and was replaced by the accord and satisfaction when the "[Hospitals] billed the Plan, accepted its payments, failed to appeal the adjustments, and then failed to refund the Plan's benefits so they could be paid directly to Chastity." Either way, the Health Providers were a common party and received notice of the breach-of-contract claim pleaded against them.

Mississippi does not consider accord and satisfaction anything other than an affirmative defense against a lawsuit to collect on an original debt. *See Hutzel v. City of Jackson*, 33 So. 3d 1116, 1121 n.5 (Miss. 2010) (recognizing accord and satisfaction as an affirmative defense under Mississippi law). The same is true in the relevant caselaw the Woods cite. *See Triangle Constr. Co. v. Fouche and Assocs. Inc.*, 218 So. 3d 1180, 1190 (Miss. Ct. App. 2017) (concluding a company's cashing of a check constituted an accord and satisfaction that barred additional recovery of outstanding debt under the parties' original contract); *Sherwin-Williams Co. v. Sarrett*, 419 So. 2d 1332, 1334 (Miss. 1982) (acknowledging "the affirmative defense of accord and satisfaction").

No party, however, has raised a claim against the Woods for recovery of discharged debt. They instead erroneously advanced a theory of liability by relying on an affirmative defense they could not assert here.

Because Mississippi law does not consider accord and satisfaction an independent cause of action, the Woods' theory is debunked. We AFFIRM the grant of summary judgment to the Health Providers on this claim.

B

We turn next to the claims of fraud and misrepresentation. To prove common law fraud in Mississippi, a plaintiff must show

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Hobbs Auto., Inc. v. Dorsey*, 914 So. 2d 148, 153 (Miss. 2005) (quoting *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992)). "Proving fraud is

difficult . . . . Clear and convincing evidence is required." *Martin v. Winfield*, 455 So. 2d 762, 765 (Miss. 1984).

Applying the *Dorsey* framework, the district court emphasized the Health Providers "were not prohibited from balance billing by statute or through contractual provisions," and found that the Tax-Time Deal, which was inaccurately presented as a comprehensive mechanism to resolve all outstanding debt, amounted to a mistake rather than an attempt to defraud the Woods.

On appeal, the Woods marshal two familiar theories to show the district court erred.

First, the Woods allege the Health Providers made "fraudulent misrepresentations" to obtain payment for "nearly $50,000 in balance bills" described to them as "legally collectible" and with consequences for failing to pay.[5] They argue the Health Providers refunded conditional payments made by the Plan so they could bill Chastity directly, a move which, in the Woods' view, suggests the Health Providers sought to defraud them.

The Health Providers retort that Chastity signed a consent form agreeing to pay "all amounts not fully covered by her health plan." They also emphasize that her "health plan paid a portion of the bills, and [they], as permitted by statute and contract, began attempts to collect the remaining amounts owed."

---

[5] The Woods also alleged the Health Providers committed "fraud by omission" by not disclosing to them their own status as "third-party beneficiaries of the contract created when the Providers billed and accepted payments from the plan." This argument, based on a purported duty to disclose, is equally unavailing because the Woods fail to present "[c]lear and convincing evidence." *Martin*, 455 So. 2d at 764.

This theory lacks merit. The Woods on appeal have failed to identify any statute or contractual term prohibiting the practice of balance billing, much less by clear and convincing evidence. Further, under Mississippi law, statements construed as threats to take future legal action generally cannot give rise to a claim of fraud. *See House v. Holloway*, 258 So. 2d 251, 253 (Miss. 1972); *Davidson v. State Farm Fire & Cas. Co.*, 641 F. Supp. 503, 512 (N.D. Miss. 1986) ("[F]raud . . . may not be predicated on a representation as to matters in the future, or upon a promise to do some act in the future, because the person to whom such statements were made has no right to rely on them."); *cf. Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 510 n.16 (5th Cir. 2008) (recounting that "puffing does not give rise to fraud liability under Mississippi law").

Next, the Woods contend the Health Providers committed fraud by making false and misleading statements intended to entice their acceptance of the Tax-Time Deal. They point to statements made by the Health Providers, including the offer to receive a discount for their payment if they paid by a specified deadline, as well as a separate alleged offer featuring a more favorable discount and timeframe within which they could pay. The Woods also contend the Health Providers misrepresented the scope of the Tax-Time Deal by conveying it would resolve all outstanding debt.

In support, the Woods point chiefly to this court's decision in *Goswami v. American Collections Enterprises, Inc.*, 377 F.3d 488 (5th Cir. 2004). We held in that case the debt collector was "deceitful" because it "made false or misleading statements about the settlement authority it held . . . both in the discount it was authorized to offer and the time within which Goswami was allowed to accept the offer." *Id.* at 496.

But *Goswami* is not instructive because it involved claims of debt collection practices prohibited by the Fair Debt Collection Practices Act, 15

U.S.C. § 1692e(10). And unlike in that case, the Woods have failed to provide evidence that the Health Providers "either authorized a higher discount that was not communicated to the Woods, or that the [Health Providers'] . . . April 1 deadline was mere lip-service rather than an actual deadline."

The offer authorized by the Health Providers instead contained both a discount and a deadline to pay a sum purporting to resolve all debt, despite failing to account for an amount owed to one of the involved parties. No record evidence undercuts the district court's conclusion that exclusion of this balance was anything other than a mistake, especially considering that the Health Providers offered the same discount for payment of this amount and are not seeking to recover it.

To be sure, we observe that the Woods' refusal to pay the inadvertently excluded amount indicates there has been no injury from the billing error. And in Mississippi, "absent injury, there can be no fraud." *Koury v. Ready*, 911 So. 2d 441, 446 (Miss. 2005) (cleaned up).

We therefore conclude the Health Providers were entitled to summary judgment on the claims of fraud and misrepresentation.

## C

Now to the civil conspiracy claim. Mississippi law provides that "[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999) (quotations omitted). To establish a civil conspiracy, the plaintiff must prove "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Rex Distrib. Co., Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019) (quotations omitted).

As a preliminary matter, "the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 519 (5th Cir. 2018) (quotations omitted). Such agreement between the parties "need not extend to all details of the scheme and may be express, implied, or based on evidence of a course of conduct." *Id.* (quotations omitted). "Inferences favorable to the plaintiff must be within the range of reasonable probability and it is the duty of the court to withdraw the case from the jury if the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Id.* at 520 (cleaned up) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 981 (Miss. 2004)).

Mississippi follows a rule common in most jurisdictions requiring a civil conspiracy claim to be predicated upon an underlying and independently actionable tort. *Sharkey v. Barber*, 188 So. 3d 1245, 1247 (Miss. Ct. App. 2016) ("[T]he claim of civil conspiracy does not stand alone, but is dependent on conspiring to commit a particular wrong."). Given our affirmance of the district court's judgment against the Woods on all other claims, no independently actionable tort remains to support the claim for civil conspiracy. *See Aiken v. Rimkus Consulting Grp.*, Inc., 333 F. App'x 806, 812 (5th Cir. 2009) (per curiam) (citing *Wells v. Shelter Gen. Ins.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002)).

Because a civil conspiracy claim cannot stand alone under Mississippi law, the Health Providers were entitled to summary judgment.

## IV

Lastly, the Woods present a catch-all section challenging the enforceability of the Financial Responsibility provision in the consent form, the validity of the assignment of benefits provision, and the sufficiency of the Health Providers' accord and satisfaction defense.

No. 24-60546

Because we decide the issues presented to us on other grounds, we need not consider these arguments. *See Sheet Pile*, 98 F.4th at 169.

V

Although we sympathize with the Woods, we AFFIRM for the reasons explained above.